**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

LISA POLLARD,
Plaintiff

**V.**

HOPE ON HAVEN HILL
DEFENDANTS

Docket No.:

---

**PLAINTIFF'S COMPLAINT & DEMAND FOR JURY TRIAL**

---

## I.   SUMMARY OF THE ACTION

The Plaintiff, Lisa Pollard, was an Employee of Hope on Haven Hill from September 30, 2019 through December 29, 2025 whereby she was terminated from her employment.  The Plaintiff asserts that she was a victim of age discrimination, retaliation, harassment, and bullying leading up to her termination.  The Plaintiff brought a claim before the EEOC and was issued a letter permitting this lawsuit.

## II. PARTIES

1.   Lisa Pollard is an individual living at 9 Bernier Street, Somersworth, NH 03878.

2.   The Defendant, Hope on Haven Hill, (HHH) Inc., is a 501c3 non-profit corporation with an address of 40 Charles Street, Rochester, NH 03867.

## III. JURISDICTION & VENUE

1.   16. The United States District Court for the District of New Hampshire has federal

subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because Plaintiffs assert claims arising under federal law.

2. 17. The United States District Court for the District of New Hampshire has supplemental jurisdiction under 28 U.S.C. § 1367 for the state law claims set forth herein, each of which arise out of a common nucleus of operative facts as the claims over which the Court has original jurisdiction.

3. Venue is proper in this matter because a claim was filed with the Equal Employment Opportunity Commission.  On January 21, 2026, the EEOC issued a letter permitting the Plaintiff to bring a suit in the Federal Courts.

4. The Employer and Employee are also both within the District of New Hampshire.

### IV. FACTUAL BACKGROUND & GENERAL ALLEGATIONS

5. The Plaintiff, Lisa Pollard, born on November 9, 1961, was an employee of Hope on Haven Hill from September 30, 2019 through December 29, 2025 whereby she was terminated from her employment after complaining about bullying after a subsequent internal investigation.

6. The Plaintiff was hired on September 30, 2019 as the Director of Operations.

7. Her role was to oversee the financial operations, human resources, facilities, purchasing, and contracts of the Employer, amongst other duties.

8.  Her role also included the management of staff, financial and personnel audits, overseeing payroll, and overseeing monthly billing of state and federal contracts.

9.  On August 6, 2025, the Employee was diagnosed with a mild age related heart murmur.

10. The Employee disclosed this information to her direct supervisor, Ms. Norton, shortly thereafter.

11. After disclosing the heart murmur, the Employee began to notice that she was being treated differently and gradually received a reduction in duties leading to her termination. The Employee believes that her age became a factor in her employment because the Employer thought she was going to become unreliable and unable to continue her work, despite the Employee never saying this to anyone.

12. On September 4, 2025, the Employee was informed by the Employer that she would be receiving a 7% raise in her annual pay, retroactive to July 1. 2025.

13. The Employee learned that other leadership team directors were receiving 12.6% and 16% annual raises for the same time period and work contributions. When the Employee inquired as to the difference in percentages, she was told that it was not because she was not as valuable as the other directors, but no further explanation was given. The Employer subsequently increased Plaintiff's raise to 12%.

14. The other directors that received the higher pay raises are significantly younger than the Plaintiff.

15. During the Fall of 2025, the Employee saw a reduction in duties and began to experience differential treatment from other leadership directors.

16. As an example, a meeting took place between directors to discuss organizational and structural duties and changes to the company.  During this meeting, an organizational

chart was presented that indicated that the Employee was in charge of Finance, HR, Contract Billing, and Marketing.

17. After this organizational chart was presented, Ms. Kerry Norton (hereinafter "Ms. Norton") took the chart and made a series of changes, subsequently placing the Employee in charge of Facilities and IT - and nothing else.

18. This was a significant change in the role of the Employee given her title in the Company.

19. After raising this problem in a one-on-one with Ms. Norton, the Employee was the victim of another reorganization that gave her back financial duties but also gave her oversight of credentialing and medical billing - duties which previously belonged to the Medical Director.

20. These new duties were outside the scope of the Employee's knowledge, education, and training.

21. This led to the Employee having to work extra hours and take on new responsibilities that were not fully identified or explained to the Employee.

22. The Employee's relationship with Ms. Norton continued to deteriorate as a result of the reorganization. The Employee felt as though she was under greater scrutiny than other employees and that she was excluded from discussions and decisions that she would have previously been a part of.

23. On November 6, 2025, The Employee emailed Ms. Norton, copying the board of directors' chair and vice chair who Ms. Norton reported to, alleging Ms. Norton to have been bullying the Employee and had requested it to stop.

24. After sending the Email, the Employee was placed on a three-day paid leave so that an investigation could be undertaken.

25. On November 11, 2025, a subsequent email was sent informing the Employee that she would be on leave until November 21, 2025.

26. On November 13, 2025, the Employee was told to turn over all of her passwords and logins and was subsequently removed from all of the accounts she was responsible for.

27. On November 21, 2025, the Employee inquired about returning to work and was given the option of returning to in-person work on November 24, 2025, or she could remain on paid administrative leave until an investigator, attorney Nancy Oliver, concluded their investigation.

28. On November 23, 2025, the Employee relayed to the Employer that they wished to return to work.  In response, the Employer stated that the Employee must "act professionally."

29. At this time, the Employer also stated via email that the Employee will have to wait to hear back from their Employer about their responsibilities and that they must fully cooperate with the attorney-investigator.

30. On November 24, 2025, the Employee relayed to the Employer that they were going to reconsider returning to work given the investigation and that they would be seeking independent legal counsel.

31. On November 25, 2025, the Employee returned to work though most of her work/online credentials had been previously revoked.

32. On December 1, 2025, the Employee met with the investigator.

33. On this same day, the Employee discovered that all of her credentials and access to the business had been shut off.

34. On December 21, 2025, the Employee was sent a copy of the results from the internal investigation, which stated that the investigator did not find a preponderance of evidence

to support the Employee's claim of bullying. In her statement to the investigator, the Employee's immediate supervisor denied having any knowledge of the Employee's heart murmur.

35. On December 29, 2025, the Employee was terminated on the basis of poor performance over the previous six (6) months.

36. This came as a shock to the Employee given their history of positive work reviews, feedback from management, and a pay raise on September 4, 2025, as well as having no prior notice of any issues with her performance.

37. The HHH Employee Handbook that was approved by the Employer's Board of Directors on November 13, 2024, and which was in effect at the time of the Employee's complaint (Pages 38-39), *Bullying in the Workplace Policy* states that:

    a. HHH considers workplace bullying unacceptable and will not tolerate it under any circumstance.

    b. HHH encourages all employees to report any instance of bullying behavior. Any reports of this type will be treated seriously and investigated promptly and impartially.

    c. HHH will protect an employee who reports bullying conduct from retaliation or reprisal.

38. The Employee asserts that she was the target of retaliation for the reason of filing a bullying complaint against her immediate supervisor.

39. In July 2025, another member of the HHH leadership team with a similar 6-plus years of tenure, the clinical director, had a complaint brought against her by several members of her staff, which alleged the clinical director had engaged in bullying and poor treatment

toward them. The clinical director was immediately put on paid leave while the complaints were investigated by members of the senior leadership team which culminated in the clinical director's resignation on November 3, 2025. The clinical director was subsequently rehired as a consultant to HHH.

40. During the clinical director's leave, the clinical director was allowed to continue to work remotely; was not asked to turn over any of her account passwords or logins; had no access to company systems removed; was told to limit contact with only specific employees related to the complaint; and was allowed on property for meetings as needed.

41. The clinical director's vacation time accruals in the payroll system (Paychex) continued to accrue throughout her leave.

42. In contrast, when the Employee was placed on paid leave, she was not allowed to work remotely; she was told not to have any communication with HHH; she was forced to turn over all of her passwords and logins for HHH accounts; her access to company systems was decreased and eventually removed completely, approximately 2 weeks prior to the conclusion of the investigation. Although the Employee had not been told she could not enter the property while on leave, one of the "performance issues" cited by the Employer leading to the Employee's termination, included coming onto property on the weekend to retrieve some of her belongings such as numerous plants and multiple pieces of artwork.

43. The Employee's vacation time accruals in the Paychex payroll system were shut off in November 2025, retroactively to October 30, 2025, prior to the investigation being completed.

44. The Employee filed a written complaint about behaviors she perceived as bullying as the result of a recently discovered, age-related medical condition, on November 6, 2025, as per HHH Employee Handbook guidance.

45. The Employee Handbook that was approved by the Employer's Board of Directors on November 13, 2024, and which was in effect at the time of the Employee's complaint (Pages 7-9), *Policy Against Discrimination and Harassment,* states:

   a. HHH is committed to providing a work environment that is free of any form of unlawful discrimination, including unlawful harassment and sexual harassment. HHH does not permit behavior, whether physical, visual, verbal, or nonverbal in nature, that may constitute discrimination or harassment of any kind based upon any category protected by state and/or federal law. Harassment is a form of employee misconduct that is demeaning to another person and undermines the integrity of the employment relationship.

   b. HHH is committed to creating and maintaining a work environment in which all employees are treated fairly and with dignity, decency, respect, and in accordance with all applicable laws.

   c. Even where the unwelcome conduct is not sufficiently severe or pervasive to constitute actionable harassment under the law, HHH will not tolerate inappropriate conduct in the workplace and in any setting related to HHH business.

   d. Individuals who believe they have experienced conduct that violates this policy, or who have concerns about such matters, should report their complaints verbally

or in writing to his/her supervisor, to the Executive Director, and/or to the Operations or HR representative, before the conduct becomes severe or pervasive.

e.  The availability of this complaint procedure does not preclude individuals who believe they are being subjected to bullying conduct from promptly advising the offender that his or her behavior is unwelcome and requesting that such behavior immediately stop.

f.  It is against our policy for any HHH employees, board members, contractors, visitors, clients, or volunteers to engage in physical, visual, verbal, or nonverbal conduct that denigrates or shows hostility toward an employee. Examples of unwelcome conduct prohibited by this policy include but are not limited to: Conduct that unreasonably interferes with an individual's work performance, that creates an intimidating or offensive work environment, that otherwise adversely affects an individual's employment opportunities and that implicates a category protected by law in which an employee is a member.

46. Based on all of these factors, the Employee filed a complaint with the EEOC.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Plaintiff in this matter has filed this matter with the EEOC and the NH Commission for Human Rights.  The EEOC has issued a 90 day right to sue letter.

## VI. CLAIMS FOR RELIEF

A.  *Violation of the Anti-Age Discrimination Provision of FLSA 29 U.S.C. § 623*

a.  The Employee incorporates all prior paragraphs of this complaint.

b.  The FLSA prohibits discrimination in employment based on age in hiring, promotion, discharge, compensation, or terms, conditions, or privileges of employment.

c. In the instant matter, the Employee is over the age of forty (40).

d. The Employee was denied compensation during the course of her employment on the basis that she was not as valuable as other employees.

e. The Employee was given a reduction of duties from her current role, despite historically positive reviews on her work.

f. The Employee was finally terminated after an investigation.

g. These events happened as a result of the Employee's age given that the pattern of discrimination indicates that the Employer treated her differently than other employees when considering workplace duties, salaries and promotions, and in the course of termination.

B. *Violation of RSA 354-A:2 Discrimination on Account of Age*

a. The Employee incorporates all prior paragraphs of this complaint.

b. *RSA 354-A:2* prohibits discrimination in employment based on age in hiring, promotion, discharge, compensation, or terms, conditions, or privileges of employment.

c. In the instant matter, the Employee is over the age of forty (40).

d. The Employee was denied compensation during the course of her employment on the basis that she was not as valuable as other employees.

e. The Employee was given a reduction of duties from her current role, despite historically positive reviews on her work after disclosing her age related heart murmur to a supervisor.

f. The Employee was finally terminated as a result of an investigation.

g. These events happened as a result of the Employee's age given that the pattern of discrimination indicates that the Employer treated her differently than other employees when considering workplace duties, salaries and promotions, and in the course of termination.

C. *Violation of the Anti-Retaliation Provision of the FLSA 29 U.S.C. § 215(a)(3)*

a. The Employee incorporates all prior paragraphs of this complaint.

b. The FLSA makes it illegal to discriminate against an Employee in the form of retaliation whereby an Employee engaged in a protected activity such as testifying in a legal proceeding about the Employer.

c.  In the instant matter, the Employee reported bullying to her supervisor.

d.  As a result, the Employer placed the Employee on paid leave.

e.  The Employer also retained an attorney to conduct an investigation.

f.  Throughout the investigative process, the Employee was given conflicting information about the status of her employment, duties, ability to return to work, among other things.

g.  After the Employee spoke to the investigator, the Employee was terminated under the guise of poor performance.

h.  This directly contradicts her performance reports.

i.  The Employee engaged in a protected activity by reporting bullying and partaking in an investigation.

j.  However, she was terminated only after speaking to the investigator.

k.  On that basis, the Employee was discriminated against in the form of retaliation.

D. _Violation of RSA 155:72 Discrimination in the form of Retaliation_

a.  The Employee incorporates all prior paragraphs of this complaint.

b.  RSA 155:72 makes it illegal to discriminate against an Employee in the form of retaliation whereby an Employee engaged in a protected activity such as testifying in a legal proceeding about the Employer.

c.  In the instant matter, the Employee reported bullying to her supervisor.

d.  As a result, the Employer placed the Employee on paid leave.

e.  The Employer also retained an attorney to conduct an investigation.

f.  Throughout the investigative process, the Employee was given conflicting information about the status of her employment, duties, ability to return to work, among other things.

g.  After the Employee spoke to the investigator, the Employee was terminated under the guise of poor performance.

h.  This directly contradicts her performance reports.

i.  The Employee engaged in a protected activity by reporting bullying and partaking in an investigation.

j.  However, she was terminated only after speaking to the investigator.

k.  On that basis, the Employee was discriminated against in the form of retaliation.

E.  *Wrongful Termination*

a.  In the instant matter, the Plaintiff was wrongfully terminated on account of her age and unlawful retaliation.

b.  The Plaintiff was treated differently after disclosing an age related health problem that led to her facing disparate treatment at work, leading to her termination.

c.  Additionally, because of the disparate treatment, the Plaintiff reported bullying to her supervisor.

d.  This led to an internal investigation whereby the Plaintiff was fired on the basis of poor performance despite historically positive reviews at work.

F.  *Breach of Contract*

a.  The Plaintiff was in a contract with her employer by and through the Employee handbook.

b.  The handbook specifically prohibits bullying in the workplace and unlawful discrimination.

c.  The Employee experienced bullying and reported it in compliance with the handbook.

d.  Despite reporting the bullying, the Plaintiff found herself to be the victim whereby she was placed on leave and subject to an investigation.

e.  After reporting the incident, the Plaintiff was terminated.

**VI. PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff hereby requests the following forms of relief:

A.  Monetary damages

B.  Compensatory damages

C.  Treble damages

D.  Reinstatement of employment

## VII. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury of all issues triable as of right.

Attorney for the Plaintiff,

/S/ *Nicole M. Bluefort*

Nicole M. Bluefort, Esq.

NH Bar ID:

The Law Offices of Nicole M. Bluefort

1155 Elm Street, Floor 8

Manchester, NH 03101

Tel:  (781) 593-1952

nicole@bluefortlaw.com

March 26, 2026